# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50302-6-II |
| Respondent, | |
| v. | |
| JEREME DAVID NORBERG, | UNPUBLISHED OPINION |
| Appellant. | |

Lee, J. — Jereme D. Norberg appeals the trial court's imposition of legal financial obligations (LFOs), arguing that the imposition of the LFOs violates substantive due process. Norberg also argues that the trial court failed to comply with RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), by imposing LFOs without making an individualized inquiry into Norberg's present or future ability to pay.[1]  Because the trial court imposed only mandatory LFOs, we disagree.  However, we remand to the trial court to apply the 2018 legislative amendments to the LFO statutes.

---

[1] Norberg also asks us to exercise our discretion and decline to impose appellate costs.  If the State files a cost bill for this appeal, Norberg may object and a commissioner of this court will determine whether awarding costs is warranted under RAP 14.2.

FACTS

The trial court convicted Norberg of attempting to elude a pursuing police vehicle and driving while license suspended in the third degree. The trial court imposed a $500 crime victim assessment, $200 criminal filing fee, and $100 DNA collection fee. Norberg appeals the trial court's imposition of LFOs.

ANALYSIS

Norberg argues that the imposition of LFOs violates substantive due process. Norberg also argues that the trial court failed to comply with RCW 10.01.160(3) and *Blazina* by imposing the LFOs without making an individualized inquiry into Norberg's ability to pay. We disagree and affirm the trial court's imposition of LFOs.

At the time Norberg was sentenced, the crime victim assessment, criminal filing fee, and DNA collection fee were mandatory LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). We have held that imposition of mandatory LFOs does not violate substantive due process. *State v. Seward*, 196 Wn. App. 579, 585-86, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015 (2017). And RCW 10.01.160(3) and *Blazina* do not apply to the imposition of mandatory LFOs. *Seward*, 196 Wn. App. at 587; *State v. Mathers*, 193 Wn. App. 913, 920-22, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016).[2]

---

[2] The dissent asserts that mandatory LFOs violate substantive due process because there is no rational basis for imposing LFOs against offenders who are unable to pay them. But the dissent's opinion only performs a rational basis analysis based on the current set of facts—that the defendant is indigent and unlikely to be able to pay LFOs. A rational basis analysis considers any conceivable set of facts to determine whether there is a rational basis for imposing LFOs. *Seward*, 196 Wn. App. at 584 ("In applying this standard, we may 'assume the existence of any necessary state of facts which [we] can reasonably conceive in determining whether a rational relationship exists

Here, the trial court properly imposed mandatory LFOs as required by statute in effect at the time. However, 2018 legislative amendments to the LFO statutes prohibit the superior courts from imposing the $200 criminal filing fee upon indigent defendants and the $100 DNA collection fee if the offender's DNA has already been collected as the result of a prior conviction. LAWS OF 2018, ch. 269, §§ 17, 18; RCW 36.18.020(2)(h); RCW 43.43.7541. Our Supreme Court has recently held that the 2018 legislative amendments to the LFO statutes apply prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). Therefore, we remand to the trial court to determine whether to impose the $200 criminal filing fee and the DNA collection fee in light of the 2018 legislative amendments.

---

between the challenged law and a legitimate state interest.' ") (alteration in original) (quoting *Nielsen v. Dep't of Licensing*, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013)); *see also Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 222, 143 P.3d 571 (2006) (same), *cert. denied*, 549 U.S. 1282 (2007). Although it is currently unlikely that the defendant will have the ability to pay LFOs, there are conceivable sets of facts that may result in the defendant being able to pay LFOs in the future. *Seward*, 196 Wn. App. at 585-86. Because it is conceivable that a defendant may be able to pay LFOs in the future, there is a rational basis for the legislature to designate some LFOs as mandatory. *Id.*.

The dissent also asserts that the fact that mandatory LFOs sometimes serve their purpose by being imposed on those who can pay, or may eventually serve their purpose because the indigency preventing defendants from currently being able to pay their LFOs could cease, cannot save mandatory LFOs under rational basis review because of the inherent contradiction of imposing mandatory LFOs on indigent defendants. But the dissent's analysis is contrary to law. "Under [the rational-basis] test a party challenging the constitutionality of a statute must show that the law is wholly unrelated to the achievement of a legitimate state purpose." *In re Interest of J.R.*, 156 Wn. App. 9, 19, 230 P.3d 1087 (2010) (citing *Seeley v. State*, 132 Wn.2d 776, 795, 940 P.2d 604 (1997)). The dissent even recognizes that mandatory LFOs are not wholly unrelated to the legislature's purpose because there are times they serve the legislative purpose. Accordingly, mandatory LFOs must survive a rational-basis review. We respectfully disagree with the dissent that mandatory LFOs violate substantive due process.

No. 50302-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Maxa, C.J.

4

BJORGEN, J. (dissenting) — For the reasons set out in my dissent in *State v. Seward*, 196 Wn. App. 579, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015 (2017), I believe that the mandatory legal financial obligations (LFOs) here assessed fail the rational basis test and deprive Jereme Norberg of substantive due process.

I agree that we apply the highly deferential rational basis test in determining whether these mandatory LFOs offend the requirements of substantive due process. The basic demand of the test is a rational relationship between the challenged law and a legitimate state interest. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 222, 143 P.3d 571 (2006). In making this determination, we may assume the existence of any necessary state of facts which can reasonably be conceived. *Id.*

The central purpose of mandatory LFOs is to raise money to help fund certain elements of the criminal justice system, without doubt a legitimate state interest. Imposing these obligations on those with the ability to pay serves that interest. On the other hand, requiring monetary payments from those who cannot and reasonably will not be able to pay them does nothing to serve that purpose. To the contrary, the principal consequence of imposing mandatory LFOs on such persons is to harness them to a debt that they realistically have no ability to pay, keeping them in the orbit of the criminal justice system and within the gravity of temptations to reoffend that our system is designed to still. Levying mandatory LFOs against those who cannot pay them thus increases the system costs they were designed to relieve. Without a *Blazina*-like[3] individualized determination of ability to pay, the assessment of mandatory LFOs not only fails

---

[3] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

to serve its purpose, but actively contradicts that purpose. The self-contradiction in such a system crosses into an arbitrariness that not even the rational basis test can tolerate.

The majority analysis relies on the authority of *Seward*. *Seward*, in turn, would salvage a reasonable relationship through a type of dragnet rationale: because these assessments would be imposed on some who can pay, their imposition on those who cannot serves the purpose of raising money. In a temporal variant of the same approach, *Seward* also argues that imposing these obligations on those who cannot pay serves the same purpose, because they may be able to pay at some point in the future. *Seward*, 196 Wn. App. at 585-86.

As shown, without a *Blazina* inquiry the imposition of mandatory LFOs will actively contradict and work against its purpose in the cases of indigent defendants. The *Seward* rationales attempt to save this contradiction by pointing out that the law may serve its purpose in some other instances or by hypothesizing that the contradiction may someday cease. However, this ineluctable contradiction between purpose and effect in some instances is not effaced by its absence in others. Nor is the contradiction relieved by the doubtful hope that it may some day pass away. These uses of the imagination are far removed from positing different ways in which a law may serve its purpose, which is the sort of speculation invited by the rational basis standard.

For these reasons, I would conclude that Norberg has raised a manifest constitutional error and that the assessment of mandatory LFOs with no inquiry into ability to pay fails the rational basis test. Therefore, I dissent.

Bjorgen, J.